# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **VANTAGE LOGISTICS, LLC,** : | |
| : | Case No. 2:19-cv-5400 |
| **Plaintiff,** : | |
| : | Chief Judge Algenon L. Marbley |
| v. : | |
| : | Chief Magistrate Judge Deavers |
| **DEWAR NURSERIES, INC.,** : | |
| : | |
| **Defendant.** : | |

## OPINION & ORDER

This matter is before the Court on Third-Party Defendant Southwest Marine and General Insurance Company's Motion for Judgment on the Pleadings (ECF No. 50). For the reasons set forth below, Third-Party Defendant's Motion is **GRANTED**.

## I. BACKGROUND

This case arises from a complaint filed on November 6, 2019, by Vantage Logistics, LLC ("Vantage Logistics") in the Delaware County Court of Common Pleas against Dewar Nurseries, Inc. ("Dewar Nurseries"), alleging claims of breach of contract, unjust enrichment, and failure to pay on an account. (ECF No. 1-1). Specifically, Vantage Logistics alleges that Dewar Nurseries selected it to serve as a transportation broker to arrange for transportation of Dewar Nurseries' goods and the parties entered a contract to that end. (*Id.* at ¶ 3). Vantage further alleges that it brokered shipments on behalf of Dewar Nurseries and that Dewar Nurseries failed to make payment for shipments occurring between October 2018 and July 2019. (*Id.* at ¶ 8). On December 10, 2019, Defendant Dewar Nurseries removed the action to federal court pursuant to 28 U.S.C. §§ 1441 and 1446. (ECF No. 1). On December 19, 2020, Dewar Nurseries filed an Answer and Counterclaim against Vantage Logistics. (ECF No. 5). Defendant alleged that the Plaintiff, as

freight broker, retained the services of a motor carrier to transport a shipment of roses interstate, which was "destroyed and declared a total loss." (*Id.* at ¶¶ 3–4).

On January 28, 2020, Defendant Dewar Nurseries filed a Third-Party Complaint against Transport By RC, LLC ("Transport by LLC"), Progressive Southeastern Insurance Company ("Progressive"), and Southwest Marine and General Insurance Company, through Avalon Risk Management ("Southwest"). (ECF No. 11). Dewar Nurseries brought a claim for declaratory judgment against Southwest, alleging that Southwest "issued a policy of insurance that purported to provide coverage for the loss at issue in this dispute." (*Id.* at ¶ 27). Southwest denied coverage for the claim and the parties have disputed the applicability and scope of the pertinent policy of insurance. (*Id.* at ¶¶ 28–29). On March 31, 2020, Southwest filed an amended Answer to Dewar Nurseries' Third-Party Complaint, in which it requested that the Third-Party Complaint against it be dismissed, and attached a copy of a Form BMC-84 memorializing a Broker's or Freight Forwarder's Surety Bond (the "Bond") executed between Vantage Logistics and Southwest, with Southwest serving as the Surety for the sum of $75,000 pursuant to the provisions of 49 U.S.C. § 13904. (ECF No. 24 & ECF No. 24 at Ex. A).

On June 12, 2020, Southwest filed a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c), asserting that Dewar Nurseries has failed to state a claim upon which relief can be granted against Southwest. (ECF No. 50). Southwest argues that the Bond it issued to Vantage Logistics, by its terms, does not provide coverage for freight damages, such as the damaged roses. (ECF No. 50 at 3). Instead, Southwest contends that the Bond, issued pursuant to 49 U.S.C. § 13904, has no application to the claims at issue as it was issued for the narrow purpose of assuring compliance by Vantage Logistics with 49 U.S.C. § 13906(b). (*Id.*). Section 13906(b) states that a surety bond must be available "to pay any claim against a broker

arising from its failure to pay freight charges under its contracts, agreements or arrangements for transportation." (*Id.* at 6). Because the suit does not concern an allegation of the broker, Vantage Logistics, failing to pay freight charges, Southwest argues that "[t]his is not the type of loss that would be covered by the Bond" and, as a result, Dewar Nurseries has failed to state a claim upon which relief can be granted as it relates to Third-Party Defendant Southwest. (*Id.* at 8).

On June 30, 2020, Dewar Nurseries filed a Memorandum Contra to Southwest's Motion for a Judgment on the Pleadings. (ECF No. 52). Dewar Nurseries argues that the terms of the Bond are in fact broader, making the surety "liable for any 'contracts, agreements, undertakings, or arrangements' made by the 'principal' for 'the supplying of transportation.'" (ECF No. 52 at 2 (quoting the Bond)). Dewar Nurseries challenges Southwest's assertion that the Bond only encompasses freight charges and counters that it is explicitly entitled to attack Vantage's bond as a shipper "explicitly invested with rights under the bond." (*Id.* at 3). Dewar Nurseries submits that Southwest's Motion should be overruled, as the applicability of the Bond can be resolved by declaratory judgment. (*Id.*).

On July 14, 2020, Southwest filed a Reply to Dewar Nurseries' Memorandum Contra to its Motion for Judgment on the Pleadings (ECF No. 53), at which time the Motion became fully briefed and ripe for decision. In its Reply, Southwest argues that Dewar "ignores and mischaracterizes" the plain language of the Bond. (*Id.* at 1). Specifically, Southwest points this Court to the language in the Bond, which notes that it is written to assure compliance with 49 U.S.C. § 13906(b), and the language of 49 U.S.C. § 13906(b) itself. (*Id.* at 2). Southwest puts forth that the reference to Section 13906(b), which requires surety bonds to be available to pay claims related to failures to pay freight charges by brokers, acts as a limiting provision in interpreting the

entirety of the Bond—meaning the Bond is strictly limited in application to "all contracts, agreements, and arrangements" regarding payment of freight charges. (*Id.* at 3).

## II.     STANDARD OF REVIEW

When a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is based on the argument that the complaint fails to state a claim upon which relief may be granted, the Court employs the same legal standard as a Rule 12(b)(6) motion. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987) ("Where the Rule 12(b)(6) defense is raised by a Rule 12(c) motion for judgment on the pleadings, we must apply the standard for a Rule 12(b)(6) motion"). The Court will grant the Rule 12(c) motion "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

When a party moves for judgment on the pleadings, the Court must construe "all well-pleaded material allegations of the pleadings of the opposing party . . . as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* at 581. The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In addition to allegations in the complaint, the Court may take into account "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (citation omitted). Additionally, the Court "may consider exhibits attached to a motion for judgment on the pleadings 'so long as they are referred to in the Complaint and are central to the claims contained therein.'" *Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1032 (S.D. Ohio 2016), *aff'd*, 714 F. App'x 565 (6th Cir. 2017) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008)).

### III. ANALYSIS

As the surety bond at issue is a creature of federal law, it is proper to start to any analysis of its applicability with the statutory scheme governing the Bond. The Bond, attached as Exhibit A to Third-Party Defendant Southwest's amended Answer, is memorialized on a Form BMC-84, a standardized form promulgated by the U.S. Department of Transportation's Federal Motor Carrier Safety Administration ("FMCSA"). (ECF No. 49 at 7). The Form BMC-84 allows the issuance of "Broker's or Freight Forwarder's Surety Bond Under 49 U.S.C. 13906." (*Id.*). This form provides a "set of standard terms and conditions" to the principal and surety. *RLI Ins. Co. v. All Star Transp., Inc.*, 608 F.3d 848, 850 (D.C. Cir. 2010). By the terms of the Bond, the Principal (in this case, Vantage Logistics) expresses its intent to become a Broker or Freight Forwarder pursuant to 49 U.S.C. § 13904. Section 13904 governs the registration of brokers for interstate transportation, laying out a number of requirements, including that the Secretary of Transportation may impose requirements for bonds or insurance (or both) as needed to protect those dealing with brokers. *See* 49 U.S.C. § 13904(f).

The Bond also states that it is specifically written to "assure compliance" with 49 U.S.C. § 13906(b). Section 13906(b), in turn, outlines financial security requirements for brokers registering with the FMCSA. Section 13906(b)(2) defines the scope of financial responsibility for brokers: surety bonds obtained to meet the requirements of the statute "shall be available to pay any claim against a broker arising from its failure to pay freight charges under its contracts, agreements, or arrangements for transportation." 49 U.S.C. § 13906(b)(2)(A). Accordingly, surety bonds obtained to satisfy the requirements of 49 U.S.C. § 13906(b), such as those memorialized on a Form BMC-84, are limited by the statute mandating their existence to claims relating to a broker's failure to pay freight charges. The Sixth Circuit's consideration of other cases involving these bonds supports this interpretation. In *Milan Export Co. v. Western Surety Co.*, 886 F.2d 783

(6th Cir. 1989), the Sixth Circuit explained that the these bonds are "intended to protect motor carriers who fall victim to broker abuse[] and . . . guarantee payment of past-due freight charges." 886 F.2d at 787. "The ICC has consistently interpreted these bonds to protect motor carriers from unpaid freight charges and such interpretations are in accord with the mandate and purposes of the Act." *Milan Exp. Co. v. Western Sur. Co.*, 792 F. Supp. 571, 574 (M.D. Tenn. 1992). When parties execute a Form BMC-84 for issuance of a surety bond, "[t]he contractual intent of the parties is to abide by the federal laws and regulations which require the bonds." *Id.* at 576. Any longstanding precedents and interpretations of the federal law are properly incorporated into the bonds themselves. *Id.* What federal law requires is for a broker to obtain a surety bond or other financial security to pay claims arising from its failure to pay freight charges. 49 U.S.C. §§ 13906(a–b). Parties who execute a Form BMC-84, by the terms of that form, enter a contractual relationship to achieve compliance with 49 U.S.C. § 13906(b). Accordingly, any other language in the Form BMC-84 must be read with the limiting principle of what compliance with Section 13906 requires. Defendant Dewar Nurseries' contention that the language "all contracts, agreements, and arrangements" should not support a narrow interpretation misses the limited purpose of a contractual arrangement entered into on a Form BMC-84. When Third-Party Defendant became a Surety to Plaintiff Vantage Logistics, it did so by the terms of the Form BMC-84 which it executed. (ECF No. 49 at 7). That form, in turn, establishes that the Bond is written to assure that the Broker is complying with 49 U.S.C. § 13906(b), which is limited to requiring a surety for claims stemming from a failure to pay freight charges by the broker. (*Id.*).

In the case *sub judice*, Vantage Logistics, the Broker, filed a Complaint against Dewar Nurseries, a shipping company who procured its services as a transportation broker. (ECF No. 2 at 1). Vantage Logistics claims that it fulfilled its duties when it brokered the requested

transportation services. (*Id.* at 2). In its Third-Party Complaint against Movant Southwest, Dewar Nurseries does not dispute that it hired the Plaintiff as a Broker. (ECF No. at ¶ 2). Taking as true all well-pleaded material allegations of the Dewar Nurseries in its Third-Party Complaint, as required under *Iqbal*, Third-Party Defendant Transport by RC was procured by Broker Vantage Logistics and undertook a shipment of roses for Dewar Nurseries. (*Id.* at ¶¶ 3–4). The shipment was rejected upon delivery to Dewar Nurseries, having experienced severe temperature abuse. (*Id.* at ¶¶ 5–6). On or about December 3, 2019, Vantage Logistics presented a notice of claim to Transport by RC and Transport by RC's insurance carrier, who declined the claim. (*Id.* at ¶¶ 7–8). Invoking its right to offset, Dewar Nurseries withheld payment of the outstanding invoices. (*Id.* at 11). In its Third-Party Complaint, Dewar Nurseries alleges that Southwest "issued a policy of insurance that purported to provide coverage for the loss at issue in this dispute, namely freight damage caused by temperature abuse." (*Id.* at ¶ 27). Vantage Logistics, the Broker, has issued a demand for coverage, which Southwest denied. (*Id.* at ¶ 28). The losses submitted in the claim from Vantage Logistics to Transport by RC are derived from an Invoice from non-party Kenly Farms billed to Dewar Nurseries for the cost of the roses. (ECF Nos. 11-1 & 11-2). These losses are not freight charges and thus are not properly covered by the Bond issued by Defendant Southwest. The Bond seeks to protect motor carriers and shippers from broker abuse by those arranging transportation services; for instance, if a broker fails to relay payment of freight charges from a shipper, the motor carrier can seek to collect on its losses against the surety bond. Conversely, a shipper facing claims of non-payment of freight charges from a motor carrier, even though the shipper has paid the broker for such fees, can likewise invoke the protection of the surety bond carried by the Broker as a requirement of its licensing by the FMCSA. The situation complained of by Dewar Nurseries falls into neither of these categories. By the terms of the surety

Bond, Southwest provides a surety to Vantage Logistics for claims arising from a failure to pay freight charges. (ECF No. 49 at 7); *see also* 49 U.S.C. § 13906(b). Dewar Nurseries admits in its own Memorandum Contra to Third-Party Defendant Southwest's Motion for a Judgment on the Pleadings that its claim is "based upon the fact that the loss and liability for the temperature abuse that caused the freight loss should be borne" not solely by the Motor Carrier or its insurer, but by Plaintiff Vantage Logistics and its surety bond issuer, Southwest. (ECF No. 57 at 2–3). The claim for freight loss due to temperature abuse, however, does not arise from a failure to pay freight charges, which is all that the Bond issued by Southwest encompasses. On the face of the pleadings, Dewar Nurseries has established no legal entitlement to recover on the surety bond issued by Southwest for the non-payment of freight charges. As a result, Third-Party Defendant Southwest is entitled to a Judgment on the Pleadings as Dewar Nurseries has failed to state a claim for which relief can be granted based on the terms of the Bond issued by Southwest.

### IV.  CONCLUSION

For the reasons discussed above, the Court finds that, as it pertains to Movant Southwest, Defendant Dewar Nurseries' Third-Party Complaint fails sufficiently to plead that the loss alleged is recoverable under the terms of the surety bond issued by the Movant. Third-Party Defendant Southwest's Motion for Judgment on the Pleadings (ECF No. 50) is therefore **GRANTED** and Dewar Nurseries' claim against them is **DISMISSED**.

**IT IS SO ORDERED.**

_____
ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE

**DATE:  November 3, 2020**